# Supreme Court of Texas

No. 24-0796

4 Families of Hobby, LLC, 4 Families of Houston, LLC, and Pappas Restaurants, Inc.,

*Petitioners*,

v.

City of Houston, Texas,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

## PER CURIAM

This petition arises from a suit alleging, among other claims, that the City of Houston violated Section 252.021(a) of the Texas Local Government Code by entering into a contract that requires an expenditure of more than $50,000 without following one of the prescribed procedures. The City filed a plea to the jurisdiction, arguing the contract is outside the scope of the statute. Without jurisdictional discovery, the trial court denied the plea. The court of appeals reversed in part and dismissed the Chapter 252 claims. Because we conclude that

jurisdictional discovery is warranted, we reverse and remand to the trial court for that purpose.

## BACKGROUND

For over twenty years, petitioner Pappas oversaw concessions at Houston's Hobby Airport under a contract with respondent City of Houston.[1] In September 2019, the City began soliciting bids for a new concessions contract. After three rounds of requests for proposals spanning three years, the City awarded the contract to Areas HOU JV, LLC by a slim margin over Pappas. On March 9, 2023, the City and Areas executed a Food and Beverage Concession Agreement (the Areas Agreement), making Areas the concessionaire at Hobby for the next ten years.

Pappas sued the City and alleged that the Areas Agreement was void because the City violated Chapter 252 of the Texas Local Government Code. The applicable version of Section 252.021(a) provides:

> Before a municipality may enter into a contract that *requires an expenditure of more than $50,000 from one or more municipal funds*, the municipality must:
>
> (1)    comply with the procedure prescribed by this subchapter and Subchapter C for competitive sealed bidding or competitive sealed proposals;
>
> (2)    use the reverse auction procedure, as defined by Section 2155.062(d), Government Code, for purchasing; or

---

[1] "Pappas" refers collectively to 4 Families of Hobby, LLC; 4 Families of Houston, LLC; and Pappas Restaurants, Inc.

2

> > (3) comply with a method described by Chapter 2269, Government Code.

Act of May 9, 2013, 83d Leg., R.S., ch. 161, § 22.002(20), 2013 Tex. Gen. Laws 622, 707 (amended 2025) (current version at TEX. LOC. GOV'T CODE § 252.021(a)) (emphasis added).[2]  The Legislature has waived governmental immunity for Chapter 252 claims: "If the contract is made without compliance with this chapter, it is void and the performance of the contract . . . may be enjoined by . . . any property tax paying resident of the municipality."  TEX. LOC. GOV'T CODE § 252.061(1).

Pappas sought a declaration that the Areas Agreement is void given the City's failure to comply with Chapter 252's procedures, as well as a temporary and permanent injunction suspending the Areas Agreement.  The parties agreed to limited expedited discovery to prepare for a temporary injunction hearing.  Two days before the hearing—and after both parties had produced the requested documents—the City filed a plea to the jurisdiction, arguing in relevant part that Chapter 252 applies only to expenditure contracts, not to revenue contracts such as the Areas Agreement.  The City asked for its plea to be heard at the temporary injunction hearing.  Pappas moved to continue the hearing in light of the City's new jurisdictional challenge.  This motion was denied, but the trial court only heard arguments on the temporary injunction at the hearing.

The court scheduled a later hearing on the plea to the jurisdiction.  Pappas then filed an emergency motion for expedited discovery on several issues, including the jurisdictional issue raised in the City's plea.

---

[2] The Legislature increased the threshold to $100,000 in 2025.

3

The trial court did not rule on this motion. At the hearing, the trial court denied the City's plea to the jurisdiction after hearing arguments from both parties. The next day, the City filed an interlocutory appeal of this ruling.

The court of appeals reversed in part and rendered judgment dismissing Pappas's Chapter 252 claims. 702 S.W.3d 698, 723 (Tex. App.—Houston [1st Dist.] 2024). The court held that "the Areas [Agreement] is a revenue generating contract" because it did not "find any provision in the Areas [Agreement] that requires the City to 'purchase' any goods or services, and Pappas has not pointed us to any such provision." *Id.* at 708. The court also looked to the Areas Agreement's "No City Expenditure" clause, which provides that "[n]othing in this Agreement shall be construed to require that the City make any expenditure of its funds by, through or under this Agreement." *Id.* at 709. In the court's view, "[t]his provision alone demonstrates that the Areas [Agreement] was not intended to require the City to make an expenditure of $50,000 or more." *Id.*

The court of appeals went on to examine the terms of the contract. It held that Article 8.1.1's requirement that the "City shall provide and maintain all utilities" and Article 8.2.1's requirement that the "City shall 'maintain all public areas and facilities'" do not on their face require expenditures of more than $50,000. *Id.* at 709-10. The court reasoned that Article 8.1.1 cannot require expenditure by the City because the provision states that Areas "shall be responsible for the cost of the use of all such [utility] services." *Id.* at 709 (alteration in original). Further, the only evidence Pappas provided was that all three Houston

4

airports combined to incur $318,568,000 in maintenance and operating expenses in 2021. *Id.* The evidence did not break these expenses down by specific airport, let alone specific locations within the airport. *Id.* at 709-10. The court held that "[b]ecause the evidence upon which Pappas relies is so weak as to do no more than create mere surmise and speculation, it fails to create a fact issue on this point." *Id.* at 710. Rather than remanding for the trial court to allow Pappas an opportunity to establish a fact issue through jurisdictional discovery, the court of appeals dismissed the Chapter 252 claim based on the record before it. *Id.* at 723.

## ANALYSIS

Texas courts routinely consider evidence when a plea to the jurisdiction challenges the existence of jurisdictional facts.[3] "If the waiver of immunity is tethered to specific factual prerequisites, the only way to know if immunity has been waived is to determine if the necessary facts exist." *Tex. So. Univ. v. Young*, 682 S.W.3d 886, 887 (Tex. 2023) (Young, J., concurring in denial of petitions). "The path to that destination often passes through jurisdictional discovery." *Id.*

---

[3] *See, e.g.*, *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) ("[T]he government's plea to the jurisdiction may . . . 'challenge[] the existence of jurisdictional facts,' requiring the trial court to 'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised.'" (alteration in original) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004))); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.").

Here, the City's plea to the jurisdiction challenged the existence of a jurisdictional fact: whether the Areas Agreement "requires an expenditure of more than $50,000" by the City. Act of May 9, 2013, 83d Leg., R.S., ch. 161, § 22.002(20), 2013 Tex. Gen. Laws 622, 707 (amended 2025); *see Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 784 (Tex. 2018) ("[W]hen the Legislature conditions an immunity waiver on the existence of a statutory violation, the elements of the violation are jurisdictional facts."). If there is a reasonable reading of the contract that could result in required expenditures by the City of more than $50,000 depending on the facts, Pappas is entitled to jurisdictional discovery.

We conclude two articles of the Areas Agreement can reasonably be read to require city expenditures of more than $50,000. First, Article 8.1.1 requires that the "City shall provide and maintain all utilities." Second, Article 8.2.1 provides that the "City shall throughout the Term hereof, maintain all public areas and facilities." These provisions could reasonably require an expenditure by the City to provide and maintain all utilities, public areas, and facilities. Pappas is entitled to jurisdictional discovery to gather evidence regarding whether these provisions will in fact require expenditures of more than $50,000 over the life of the contract.

The court of appeals made three errors in reaching the opposite conclusion. First, Chapter 252 makes no distinction between revenue contracts and expenditure contracts. Any city expenditure of $50,000 or more will qualify; net expenditures are not required. It is therefore irrelevant that the Areas Agreement will generate revenue for the City.

6

Similarly, evidence that the City would make the expenditure regardless of the contract does not resolve the question at hand. The only relevant question under the statute is whether the Areas Agreement "requires an expenditure of more than $50,000." Act of May 9, 2013, 83d Leg., R.S., ch. 161, § 22.002(20), 2013 Tex. Gen. Laws 622, 707 (amended 2025).

Second, Article 8.1.1's provision that Areas "shall be responsible for the cost of the use of all such [utility] services" does not mean that the City has no expenditures at all. Rather, it is reasonable to read the two parts of this article as operating in tandem. The City must "provide and maintain all utilities," which may include costs associated with making these utilities available and maintaining their availability for use. Once the utilities are available, Areas is "responsible for the cost of the use of" those utilities. If the City intended Article 8.1.1 to require only expenditures by Areas, it could have clarified "without cost to City" or "at no cost to City," as it did throughout Article 5.8. The lack of any such language indicates that Article 8.1.1 could reasonably require an expenditure by the City in providing and maintaining all utilities.

Third, the No City Expenditure clause does not resolve this issue. A municipality cannot circumvent Chapter 252's requirements by adding a disclaimer clause to a contract that in fact does require expenditures of over $50,000. This is not to say that a disclaimer clause can *never* end the analysis. For example, the existence of a strongly worded disclaimer clause—one with language indicating it overrides any other provisions potentially requiring city expenditures—would be sufficient to resolve the analysis without jurisdictional discovery. Such

7

a contract could not reasonably be read to fall within Chapter 252's scope.

But this contract's No City Expenditure clause lacks such language. Instead, this provision appears to be an aid in resolving ambiguities: "Nothing in this Agreement *shall be construed* to require that the City make any expenditure of its funds" under the Areas Agreement. (Emphasis added.) Any ambiguities in the Areas Agreement should be resolved with this provision in mind. But if Pappas provides evidence that unambiguous provisions of the Areas Agreement require expenditures totaling more than $50,000, then the mere existence of the No City Expenditure clause does not excuse the City from its obligation to comply with Chapter 252.

Pappas has preserved its request to discover such evidence at every step. It sought jurisdictional discovery two days after the City filed its plea to the jurisdiction. It moved for expedited jurisdictional discovery in anticipation of the hearing on the plea. At the hearing, Pappas emphasized its need for jurisdictional discovery. On appeal, Pappas asked the court of appeals to lift the stay of trial court proceedings, which would allow further discovery. And it asked this Court "for an opportunity to conduct jurisdictional discovery before its claims are dismissed."[4]

---

[4] The City contends Pappas was denied discovery and failed to seek appellate review. We disagree. Although the trial court denied Pappas's request for a continuance of the temporary injunction hearing, which included a request for discovery regarding the City's plea to the jurisdiction, the court ultimately considered the plea at a later hearing. And in denying the plea at that hearing, the court either (1) determined that Pappas had already pleaded sufficient jurisdictional facts to support the City's waiver of immunity, or

Pappas has not had an opportunity to obtain jurisdictional discovery. The expedited discovery in this case was limited in scope to the temporary injunction and was completed before the City raised this jurisdictional issue. Despite numerous requests for jurisdictional discovery, Pappas has yet to receive any responsive information from the City. The court of appeals nonetheless dismissed Pappas's Chapter 252 claims based solely on evidence Pappas was able to obtain from public records. We reverse and remand to give Pappas a fair opportunity to meet its burden of establishing a genuine issue of material fact regarding whether the Areas Agreement requires an expenditure of more than $50,000.

## CONCLUSION

Pursuant to Texas Rule of Appellate Procedure 59.1, without hearing oral argument, we grant the petition for review, reverse the portion of the court of appeals' judgment dismissing Pappas's Chapter 252 claims, and remand those claims to the trial court for jurisdictional discovery.

**OPINION DELIVERED:** January 9, 2026

---

(2) exercised its discretion in deciding to await further development of the case—including discovery—before making the jurisdictional determination. *See Miranda*, 133 S.W.3d at 227. Pappas had no reason to appeal this ruling in its favor. Instead, the error arose from the court of appeals' decision to reverse and dismiss the Chapter 252 claims without allowing jurisdictional discovery, and Pappas properly raised that issue in this Court. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 517-18 (Tex. 2015).

9